# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JUSTIN D. WEAVER, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 18-cv-961 (TSC) |
| MICHAEL D. RUSSELL *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Justin Weaver, a federal prisoner appearing *pro se*, challenges the decision of the Department of Homeland Security (DHS) to exclude him from federal contracting and assistance programs based on his convictions.  DHS has moved for summary judgment, ECF No. 28.  For the following reasons, the motion will be GRANTED.

## I.  BACKGROUND

### 1.  Regulatory Framework

"Debarment is an administrative action which excludes nonresponsible contractors from government contracting."  *Caiola v. Carroll*, 851 F.2d 395, 397 (D.C. Cir. 1988).  The labyrinthine regulations governing debarment are published in 2 C.F.R. Part 180 (Office of Management and Budget Guidance) and 48 C.F.R. Subpart 9.4 (Federal Acquisition Regulations (FAR).  Debarment aims "[t]o protect the public interest" of the federal government and to ensure "the integrity of Federal programs by

1

conducting business only with responsible persons." 2 C.F.R. § 180.125(a).  Agencies

use "the nonprocurement debarment and suspension system to exclude from Federal

programs persons who are not presently responsible."  2 C.F.R. § 180.125(b).  DHS has

adopted the "policies  and procedures" of OMB's Guidance.  2 C.F.R. § 3000.10.

An "exclusion is a serious action" to be taken "only to protect the public

interest," and not "for the purposes of punishment."  2 C.F.R. § 180.125(c).  That said,

> a Federal agency may debar a person for—(a) Conviction of
> or civil judgment for . . .  (3) Commission of embezzlement,
> theft, forgery, bribery, falsification or destruction of records,
> making false statements, tax evasion, receiving stolen
> property, making false claims, or obstruction of justice; or (4)
> Commission of any other offense indicating a lack of business
> integrity or business honesty that seriously and directly
> affects your present responsibility[.]

2 C.F.R. § 180.800.  Agency officials who receive pertinent information "from any

source" may refer the information to the agency's "suspending or debarring official"

who ultimately decides whether suspension or debarment is warranted.  2 C.F.R. §

180.600.

## 2.  Criminal History Summary

On January 27, 2011, Plaintiff pleaded guilty in the United States District Court

for the Central District of Illinois to one count each of production of child pornography,

possession of child pornography, and destruction of evidence.  Plaintiff is serving a

lengthy prison sentence, to be followed by a life term of supervised release.  *Weaver v.*

*United States*, No. 12-3216, 2015 WL 3814457, at *1 (C.D. Ill. June 18, 2015).  His

current release date is November 29, 2034.  https://www.bop.gov/inmateloc/ (last

visited Oct. 14, 2020).

### 3. Administrative Proceedings

As a result of Plaintiff's convictions, then-Director Randolph W. Sawyer of the Suspension and Debarment Division of Immigration and Customs Enforcement (ICE) -- a DHS component -- recommended a proposal to debar Plaintiff for 20 years. Admin. Record ("AR") at 1-4, ECF No. 28-1. Sawyer cited "the egregiousness of the [criminal] misconduct," the actual and potential harm to the child victims, and Plaintiff's destruction of evidence and failure to notify the appropriate government authorities as factors for "a departure from the general three-year period of debarment[.]" *Id*. at 4. Plaintiff had no "current federal government contracts in his name," had not "received any federal assistance," and was not slated for "upcoming awards." *Id*. at 1, 3. Nevertheless, Sawyer concluded that Plaintiff "could reasonably be expected to receive federal assistance, loans or scholarships with the U.S. Federal Government" and thus qualified as a "participant" as defined by 2 C.F.R. § 180.980. *Id*. at 3 (citing 2 C.F.R. § 180.120(a)). Sawyer posited that the underlying "incident," while not arising from "a federal procurement or assistance transaction," raised questions about Plaintiff's "general business integrity, business honesty, and present responsibility . . . and is of legitimate interest to ICE." *Id*.

On August 14, 2012, ICE Suspension and Debarment Official William C. Randolph accepted Sawyer's recommendation and mailed Plaintiff a Notice of Proposed Debarment. AR 20-22. The Notice cited the basis of the proposed action, 2 C.F.R. §§ 180.800 (a)(3) and (a)(4). It explained that if disbarred, Plaintiff would be ineligible to receive federal contracts and "certain federal assistance, loans and benefits," and his "name would be published in the General Services Administration's System for Award

Management." AR 20. The Notice informed Plaintiff of his right to challenge the proposed action within 30 calendar days, failing which the debarment would be imposed "for a period of twenty years beyond [his] period of confinement" or an "estimated length" of 43 years. AR 20-21.

On October 17, 2012, having received no challenge to the proposed action, Randolph sent to Plaintiff by certified mail the Notice of Debarment, which was effective immediately through June 25, 2055. AR 27-30. On August 1, 2016, Plaintiff petitioned DHS for reconsideration of ICE's action, asserting that the debarment violated his constitutional rights to due process and equal protection and was "unlawfully applied." AR 33. In support of the latter, Plaintiff disputed that he was a "'participant' for the purposes of 2 C.F.R. § 180 *et seq*." and questioned the "rational nexus between the debarment sanction" and his criminal convictions. *Id*. Plaintiff requested that the debarment be vacated and "all record of it" expunged. *Id*.

On November 2, 2016, DHS Suspension and Debarment Official Michael D. Russell affirmed ICE's debarment decision but reduced the years beyond incarceration from twenty to three. AR 35-38. As for the constitutional challenge, Russell determined from the administrative record that Plaintiff was "afforded procedural due process," *i.e.* reasonable notice of the proposed action and a meaningful opportunity to be heard on it. *Id*. 35-36. As for the non-constitutional challenges, Russell explained:

> A "participant" is defined as "any person who submits a proposal for or who enters into a covered transaction, including an agent or representative of a participant." *See* 2 C.F.R. § 180.980. Debarment does not require evidence of active participation in covered transactions, only that the respondent "has been" or "reasonably may be expected to be" involved in a covered transaction. *Uzelmeier v. US. Dept. of*

4

*HHS*, 541 F. Supp. 2d 241 (D.D.C. 2008). Accordingly, this is a very broad definition.

The administrative record indicates that you were a firefighter prior to your arrest and incarceration. The federal government frequently enters into contracts for fire suppression, life safety, and emergency management services. Furthermore, the federal government often enters into small business loans and small business innovation research grants with such participants. Accordingly, due to prior work experience in emergency management, you are a participant, as defined by 2 C.F.R. § 180.980, because you could reasonably be expected to receive federal assistance, loans or scholarships with the federal government as a participant, or as an agent for, or a representative of, a participant as defined under 2 C.F.R. § 180.910. Additionally, while incarcerated, inmates are still entitled to federal assistance including small business loans, scholarships, grants, and other forms of federal assistance.

AR 36.  As for the nexus between Plaintiff's convictions and the debarment, Russell

explained:

DHS considers a wide variety of cases for suspension and debarment and evaluates each proposed debarment based on the unique facts presented. In your case, you were investigated as part of Project Safe Childhood (PSC), a nationwide initiative to combat the growing epidemic of child sexual exploitation and abuse. ICE is one of many federal, state, and local law enforcement partners in the PSC task force. Pursuant to 2 C.F.R. § 180.860, I specifically considered the nature of the felony for which you were adjudicated guilty and the harm to the government's business interests based on the misuse of interstate commerce under which the relevant criminal statute is predicated. Furthermore, I considered the harm to the minors who were in the visual depictions of the sexually explicit conduct. *See* 2 C.F.R. § 180.860(a).  As it is in the government's interest to protect such minors, your lack of cooperation with the investigation as demonstrated by the destruction of evidence is especially aggravating. *See* 2 C.F.R. § 180.860(i). In addition, your failure to report the criminal misconduct to the appropriate government agency is troubling. *See* 2 C.F.R. § 180.860(n). All of these facts indicate a lack of business integrity or business honesty that seriously and directly

> affects your present responsibility and are aggravating factors
> contributing to the Agency's determination.

AR 37.

### 4. Court Proceedings

Plaintiff filed this case on April 19, 2018, naming as defendants DHS, agency component ICE, ICE Division Director Sawyer, and DHS Debarment Official Russell. The individuals were dismissed from the case, *see* May 29, 2019 Order, ECF No. 21, and the proceedings continued under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. Defendants now argue that the claims against ICE should be dismissed because APA review is limited to DHS' final action. *See* Mem. at 9-10. The court agrees; therefore, the complaint against ICE is hereby dismissed.

## II. LEGAL STANDARD

On a motion for summary judgment in a suit seeking APA review, the standard under Fed. R. Civ. P. 56(a) does not apply. *Coe v. McHugh*, 968 F. Supp. 2d 237, 239 (D.D.C. 2013). Instead the court must decide as a matter of law "whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Id.* at 240 (citing *Richards v. INS*, 554 F.2d 1173, 1177 & n. 28 (D.C. Cir. 1977)). The Court's review is "highly deferential" and begins with a presumption that the agency's actions are valid. *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981).

Pursuant to the APA, a court must set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). "In evaluating a debarment under this standard, the court must consider the entire administrative record and determine 'whether the decision was based on a

6

consideration of the relevant factors and whether there has been a clear error of judgment.'" *Burke v. U.S. Envtl. Protection Agency*, 127 F. Supp. 2d 235, 238 (D.D.C. 2001) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)).  The court is "not empowered to substitute its judgment for that of the agency," *Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 416, but instead must consider only "whether the agency acted within the scope of its legal authority, whether the agency has explained its decision, whether the facts on which the agency purports to have relied have some basis in the record, and whether the agency considered the relevant factors." *Fulbright v. McHugh*, 67 F. Supp. 3d 81, 89 (D.D.C. 2014) (citing *Fund for Animals v. Babbitt*, 903 F. Supp. 96, 105 (D.D.C. 1995)); *see Clark County, Nev. v. FAA*, 522 F.3d 437, 441 (D.C. Cir. 2008) ("so long as the agency engaged in reasoned decision making and its decision is adequately explained and supported by the record," its action will be upheld) (internal quotation marks and citations omitted)).  The plaintiff bears the burden of establishing the invalidity of the agency's action. *Fulbright*, 67 F. Supp. 3d at 89.

### III.  ANALYSIS

#### 1.  Subject Matter Jurisdiction

Defendants assert "in the alternative" that the complaint should be dismissed for lack of standing.  Because standing is "a defect in subject matter jurisdiction," *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987), the court must resolve this potential barrier first.  *See Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1162 (D.C. Cir. 2005) ("Without jurisdiction the court cannot proceed at all in any cause.") (internal quotation marks and citation omitted)).

Federal courts are vested with the power of judicial review extending only to "Cases" and "Controversies."  U.S. Const. art. III, § 2.  Courts have, in interpreting this limitation on judicial power, "developed a series of principles termed 'justiciability doctrines,' among which are standing, ripeness, mootness, and the political question doctrine."  *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (citing *Allen v. Wright*, 468 U.S. 737, 750 (1984)).  The "core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  In order to satisfy the standing requirement, a plaintiff must establish at a minimum (1) that he has "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical";  (2) that "a causal connection" exists "between the injury and the conduct complained of . . ., and [is] not the result of the independent action of some third party not before the court"; and (3) that the injury will "likely" be redressed by a favorable decision.  *Id*. at 560-61 (alterations, internal quotation marks, and citations omitted).  A "person suing under the APA must satisfy not only Article III's standing requirements, but an additional test: The interest he asserts must be 'arguably within the zone of interests to be protected or regulated by the statute' that he says was violated."  *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012) (citation omitted).

Defendant posits that because Plaintiff disputes in his complaint that he is a "participant" for purposes of debarment, he "effectively pleads him[self] out of court as it strongly suggests that he lacks constitutional standing."  Mem. of Law at 1.  Given

the current record, this argument is untenable.  In resolving the jurisdictional question, the "court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F.Supp.2d 18, 22 (D.D.C. 2000) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).  It "is well-settled that there is standing to seek judicial review of agency action in the district courts under . . . 5 U.S.C. § 706(2)(A) when arbitrary or capricious agency conduct is claimed." *In re Smith & Wesson,* 757 F.2d 431, 433 (1st Cir. 1985) (citing *Chrysler Corp. v. Brown*, 441 U.S. 281 (1978)); *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573 n.7 (1992) ("The person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy."); *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 188 (D.C. Cir. 2006) ("[I]t is clear that the APA suppl[ies] a generic cause of action in favor of persons aggrieved by agency action.") (internal quotation marks and citation omitted) (alteration in original)).

DHS' debarment is premised on Plaintiff's current ability to qualify for "federal assistance, loans or scholarships with the U.S. Federal Government," AR  36, and it effectively disqualifies him from such programs for the duration of his incarceration. Therefore, the Court finds that Plaintiff has Article III standing, as well as prudential standing under "the APA's generous review provisions." *Bennett v. Spear*, 520 U.S. 154, 163 (1997) (internal quotation marks omitted).

### 2.  The Merits

As discussed above, an agency's decision will stand if it "is rational, based on consideration of the relevant factors[,] within the scope of the authority delegated to the agency by the statute," *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 30 (1983), and responds to all plaintiff's non-frivolous arguments, *Frizelle v. Slater*, 111 F. 3d 172, 177 (D.C. Cir. 1997).  DHS' decision meets these criteria.

As one of many "enforcement partners" of Project Safe Childhood, AR 37, ICE participated in the criminal investigation of Plaintiff, AR 18, and has "expertise in [the] subject matter," AR 3.  That incarcerated individuals like Plaintiff are "still entitled to federal assistance including small business loans, scholarships, grants, and other forms of federal assistance," AR 36, rationally supports the agency's selection of Plaintiff for debarment.  In addition, the administrative record contains ample evidence of a nexus between the debarment and Plaintiff's convictions.  Most notably is the conviction for knowingly altering, destroying, and falsifying evidence with the intent of impeding the criminal investigation, *see* AR 7, which falls squarely within the qualifying convictions listed in 2 C.F.R. §§ 180.800(a)(3) and indicates "a lack of business integrity or business honesty."  AR 37.

In pleading guilty, moreover, Plaintiff admitted (1) to coercing "a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction" with "materials that had been mailed, shipped, and transported in interstate and foreign commerce," AR 5, and (2) knowingly possessing  "images of child pornography" on a "computer hard drive, and other digital storage materials" that were "shipped and

transported in interstate and foreign commerce." AR 6. Such evidence adequately supports the debarring officials' findings under 2 C.F.R. § 180.860 of "numerous aggravating factors" and "minimal mitigating factors," AR 2, the former of which "significantly outweigh" the latter, AR 37. And "an agency's interpretation of its own regulations is entitled to considerable deference." *Burke*, 127 at 239 (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 844 (1984) (other citation omitted)).

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment will be GRANTED. A corresponding order will issue separately.

Date:  October 14, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

11